# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Batman Investments LLC, individually and on behalf of all others similarly situated, | : <br> : <br> : |
|  | :   Hon. Catherine Henry, U.S.D.J. |
| Plaintiff, | : |
| v. | :   Civil Action No. 5:25-cv-04911-CH |
|  | : |
| Jerry Hostetter, | :   Oral Argument Requested |
| Mir Jafer Ali Joffrey (a/k/a Buck Joffrey), | : |
| Randall Leaman, and | : |
| David Zook, | : |
| Defendants. | : |
|  | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RANDALL LEAMAN'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................2

      A.     Standard of Review for a Motion to Dismiss...............................................5

      B.     Standard of Review for Fraud Claims .........................................................6

SUMMARY OF ARGUMENT ....................................................................................8

    POINT I ................................................................................................................8

    COUNT III FOR AIDING AND ABETTING FRAUD SHOULD BE
    DISMISSED .........................................................................................................8

      A.     Count III for aiding and abetting fraud should be dismissed
          because plaintiff failed to plead the claim for fraud with
          sufficient particularity. ...............................................................................8

      B.     The Complaint should be dismissed because it fails to state
          a claim for which relief can be granted.....................................................10

    POINT II ..............................................................................................................12

    COUNT III FOR AIDING AND ABETTING BREACH OF FIDUCIARY
    DUTY SHOULD BE DISMISSED .......................................................................12

      A.     Count III for aiding and abetting fiduciary duty should be
          dismissed because Plaintiff failed to plead the claim with
          sufficient particularity. ...............................................................................13

      B.     Count III for aiding and abetting fiduciary duty should be
          dismissed because Plaintiff failed to state a claim upon
          which relief can be granted. ........................................................................14

CONCLUSION.........................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Artesanias Hacienda Real S.A. de C.V. v. N. Mill Cap. LLC*,
No. CV 16-4197, 2021 WL 12315467, 1 (E.D. Pa. Aug. 19, 2021).........................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................5, 6

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*,
459 U.S. 519 (1983)............................................................................................................5

*August Uribe Fine Art, LLC v. Dartmilano SRL*,
No. CV223104KMJBC, 2023 WL 2644447 (D.N.J. Mar. 27, 2023)..................................10

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5

*Christidis v. First Pa. Mortg. Trust*,
717 F.2d 96 (3d Cir. 1983) ..........................................................................................6, 8, 9

*Cosmas v. Hassett*,
886 F.2d 8 (2nd Cir.1989) ...................................................................................................7

*DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co.*,
388 F.3d 886 (D.C. Cir. 2004)....................................................................................12, 16

*DiMare v. MetLife Ins. Co.*,
369 Fed. App'x 324 (3d Cir. 2010) ......................................................................................7

*Doe v. Univ. of Sciences*,
961 F.3d 203 (3d Cir. 2020) ...............................................................................................5

*Ford-Greene v. NHS, Inc.*,
106 F. Supp. 3d 590 (E.D. Pa. 2015) ...................................................................................5

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...............................................................................................7

*Gordon v. Diagnostek, Inc.*,
812 F. Supp. 57 (E.D. Pa. 1993) .........................................................................................8

*Gould Ventures, LLC v. Cooley LLP*,
No. CV 24-9485 (RK) (TJB), 2025 WL 1482493 (D.N.J. May 23, 2025)..........................11

*Gross v. Summa Four, Inc.*,
  93 F.3d 987 (1st Cir.1996) ............................................................................. 7

*Hartford Acc. & Indem. Co. v. Am. Exp. Co.*,
  542 N.E.2d 1090 (1989) ........................................................................... 12, 16

*Hedges v. United States,*
  404 F.3d 744 (3d Cir. 2005) ........................................................................... 5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ..................................................................... 6, 7

*In re Rockefeller Center Prop. Sec. Litig.,*
  311 F.3d 198 (3d Cir. 2002) ........................................................................... 6

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ........................................................................... 6

*Kolbeck v. LIT America, Inc.,*
  939 F. Supp. 240 (S.D.N.Y.1996) ................................................................ 13

*Marion v. Bryn Mawr Tr. Co.*,
  288 A.3d 76 (Pa. 2023) ........................................................................... 10, 14

*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2d Cir. 1993) ........................................................................... 7

*O'Brien v. National Property Analysts Partners*,
  936 F.2d 674 (2d Cir.1991) ........................................................................... 7

*Odesser v. Vogel,*
  No. CIV.A. 85-6931, 1986 WL 4463 (E.D. Pa. Apr. 10, 1986) ..................... 8

*S & K Sales Co. v. Nike, Inc.,*
  816 F.2d 843 (2d Cir.1987) .......................................................................... 13

*Shapiro v. UJB Fin. Corp.,*
  964 F.2d 272 (3rd Cir. 1992) ......................................................................... 7

*Suna v. Bailey Corp.*,
  107 F.3d 64 (1st Cir. 1997) ........................................................................... 6

*Tuchman v. DSC Communications Corp.,*
  14 F.3d 1061 (5th Cir.1994) .......................................................................... 7

*Van Horn, Metz & Co. v. JPMorgan Chase & Co.*,
  No. CV 23-1693 WL 968307, at *2 (E.D. Pa. Mar. 31, 2025) ............. 10, 12, 16

11182119.1

**<u>Other Authorities</u>**

Restatement (Second) of Torts § 876(b) (1979) .................................................................. 10, 14

Restatement, Section 876, Persons Acting in Concert ................................................................. 14

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6).............................................................................................. passim

Fed. R. Civ. P. 9(b) ................................................................................................... passim

## PRELIMINARY STATEMENT

Plaintiff Batman Investments LLC, individually and on behalf of all others similarly situated ("Plaintiff"), on August 27, 2025, filed a putative class action complaint in the Eastern District of Pennsylvania against Defendants Jerry Hostetter ("Hostetter"), Mir Jafer Ali Joffrey (a/k/a Buck Joffrey) ("Joffrey"), David Zook ("Zook") and Randall Leaman ("Leaman"). By and through his Counsel, Defendant Leaman, for the reasons set forth below and herein, hereby moves to dismiss the Complaint against him in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, with prejudice.

The Complaint alleges that Mr. Leaman aided and abetted the Prestige Fund Officers Hostetter, Joffrey and Zook's frauds and breaches of fiduciary duty (see Counts II and III), but the Complaint fails to set forth any allegations supporting those claims, let alone the requisite knowledge or assistance required under Pennsylvania law (pp. 29-30 of the Complaint).

The putative class action Complaint filed by Plaintiff alleges a Ponzi scheme whereby Plaintiff was defrauded by *the Prestige Funds*, whose Executive Officers are alleged to be Defendants Hostetter, Zook, and Joffrey ("the Prestige Fund Defendants"). Compl. ¶¶ 8, 16-18. Plaintiff alleges that *the Prestige Funds* raised money from thousands of retail investors to procure a network of ATMs but instead operated a Ponzi scheme to defraud investors. *Id.* at ¶ 2. Plaintiff alleges that *the Prestige Funds* and their Executive Officers Hostetter, Joffrey and Zook created and circulated materially misleading Private Placement Memoranda ("PPMs") that Plaintiff relied upon, causing Plaintiff's alleged losses. *Id.* at ¶¶ 29-33. Plaintiff alleges while claiming to manage a portfolio of approximately 38,000 ATMs, in reality *the Prestige Funds* owned fewer than 10,000 ATMs, many of which were not even in operation, sitting in warehouses. *Id.* at ¶ 5.

While conceding that the alleged fraud and breaches of fiduciary duty were by the Prestige Funds and its officers, Plaintiff claims – without any basis in fact or law – that Defendant Leaman,

then CEO of Paramount, in which the Prestige Funds was invested, "aided and abetted" those alleged frauds and breaches of fiduciary duty by the Executive Officers of the Prestige Funds. Counts II and III, Compl. ¶¶ 154-169.

Yet other than boilerplate allegations – which are insufficient as a matter of law – the Complaint is devoid of allegations regarding what alleged "knowing substantial assistance" Defendant Leaman supposedly provided for the alleged frauds or breaches of fiduciary duty. *See* Compl. ¶ 8. There is no assertion that Defendant Leaman knew of the alleged materially misleading statements or provided any assistance to the Prestige Funds regarding those allegedly false claims. Plaintiff's unsubstantiated allegations that Defendant Leaman "aided and abetted" the alleged fraud or "aided and abetted" the alleged breaches of fiduciary duty are insufficient because these boilerplate allegations do not meet the requisite standard for pleading knowing and substantial assistance in order to state a claim under Pennsylvania law. The Court should dismiss the Complaint against Defendant Leaman in its entirety with prejudice because no sufficient allegations against Defendant Leaman were – or could be – pled.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 27, 2025, Plaintiff filed a putative Class Action Complaint in the United States District Court for the Eastern District of Pennsylvania alleging that Plaintiff Batman Investments LLC, individually, and on behalf of all others similarly situated, was harmed by this $700,000,000 Ponzi scheme. Plaintiff's lawsuit asserts these claims against the Executive Officers of the Prestige Funds, Defendants Zook, Joffrey, and Hostetter, as well as Defendant Leaman, who was then CEO of Paramount Management Group LLC ("Paramount.")

The Complaint names three Defendants (Hostetter, Joffrey and Zook) who are alleged to be the "Executive Officers" of the Prestige Funds. Compl. ¶¶ 16-18. It alleges that Hostetter is Executive Officer of each of the Prestige Funds with the exception of Prestige Fund D LLC. *Id.*

-2-

at ¶16.  It alleges that Joffrey was an Executive Officer of each of the Prestige Funds with the prefix "WF Velocity Fund."  *Id.* at ¶ 17. It alleges that Zook was an Executive Officer of Prestige Fund A II LLC, Prestige Fund A V LLC, Prestige Fund A VI LLC, Prestige Fund A VII LLC, and all of the Prestige Fund D iterations.  *Id.* at ¶18.[1]  The Complaint further alleges that each of the Prestige Funds were managed by "Prestige Fund Managers" and owned or controlled by the following entities and/or individuals: Prestige Investment Group (owned by Hostetter), Heller Capital Group, LLC (owned by Daryl Heller), the Real Asset Investor LC (owned by Zook), and Vitruvian Group, LLC (owned by Joffrey).  *Id.* at ¶¶ 19-20.

The Complaint alleges a Ponzi scheme whereby Plaintiff and a putative class of investors in the Prestige Funds, were defrauded by Prestige Funds when the Prestige Funds raised money from thousands of retail investors based on alleged fraudulent misrepresentations.  The Complaint alleges:

> The Prestige Funds raised money from thousands of retail investors. The pitch was straightforward: investors' funds would be used to procure and operate a network of automated teller machines ("ATM(s)"), the revenues from which (earned primarily through use fees) would fund fixed monthly returns to investors.

*Id.* at ¶ 2.  Plaintiff alleges that Hostetter, Joffrey and Zook created and disseminated false PPMs that were provided to Plaintiff and members of the putative class prior to their purchases of interests in the Prestige Funds, and further that the PPMs were "<u>the only meaningful source of</u>

---

[1] The following funds are collectively referred to in the Complaint as the "Prestige Funds": Prestige Fund A I LLC, Prestige Fund A II LLC, Prestige Fund A IV LLC, Prestige Fund A V LLC, Prestige Fund A VI LLC, Prestige Fund A VII LLC, Prestige Fund A VIII LLC, Prestige Fund A IX LLC; Prestige Fund B LLC, Prestige Fund B BTM I LLC, Prestige Fund B II LLC, Prestige Fund B IV LLC, Prestige Fund B V LLC, Prestige Fund B VI LLC, Prestige Fund B VII LLC, Prestige Fund D LLC, Prestige Fund D BTM I LLC, Prestige Fund D III LLC, Prestige Fund D IV LLC, Prestige Fund D V LLc, Prestige Fund D VI LLC, Prestige Fund E I LLC, WF Velocity Fund I LLC, WF Velocity Fund IV LLC, WF Velocity Fund V LLC, WF Velocity Fund VI LLC, and WF Velocity Fund VII LLC.

information available to Plaintiff and the class members in connection with their purchase decisions." *Id.* at ¶ 33 (emphasis added). Plaintiff alleges that ***the Prestige Funds*** and their Executive Officers ***Hostetter, Joffrey and Zook*** created and circulated these materially misleading PPMs that Plaintiff relied upon, causing losses. *Id.* at ¶ 33. The Complaint states: "[d]espite purporting to manage a portfolio of approximately 38,000 ATMs, ***the Prestige Funds*** owned fewer than 10,000 ATMs, many of which were not even in operation, sitting in warehouses." *Id.* at ¶ 5. The Complaint alleges that "lacking meaningful cash flow from operations, ***the Prestige Funds*** relied on a constant influx of investor money to stay afloat to fund Ponzi payments to existing investors." *Id.* at ¶ 6. Plaintiff alleges that itself and the class have lost their principal investments and have not received their promised monthly distributions since April 2024. *Id.* at ¶ 8.

Defendant Leaman is not alleged to have any part in the Prestige Funds whatsoever. With respect to Defendants collectively, Plaintiff alleges, "[a]s a result of the Prestige Funds' fraud and breaches of fiduciary duty to Plaintiff and the putative class (the "Class"), and Defendants' knowing substantial assistance thereof," Plaintiff suffered losses. *Id.* at ¶ 8. Yet other than the boilerplate allegation of knowing substantial assistance by the unspecified "Defendants" group, the 35-page Complaint is completely devoid of any allegations regarding what alleged "knowing substantial assistance" Defendant Leaman particularly provided for the Prestige Funds' alleged Ponzi scheme. The Complaint utterly fails to allege what supposedly Defendant Leaman did to "aid and abet" the alleged fraud and breaches of fiduciary duty by the Prestige Fund Defendants. Other than simple recitations of the legal standard regarding "knowing substantial assistance" of the Prestige Funds' officers' alleged fraud and breach of fiduciary duties toward their investors, there is no allegation regarding Leaman's knowledge or assistance of the alleged fraud by the

Prestige Fund officers. Accordingly, Defendant Leaman should be dismissed for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

### A.    Standard of Review for a Motion to Dismiss

The Court must grant a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) where plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," "devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal quotations omitted). In considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, *Doe v. Univ. of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[.]" *Twombly*, 550 U.S. at 563 n.8 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

In *Ashcroft*, the Supreme Court set forth a two-pronged approach to a court's review of a motion to dismiss pending before the court, explaining: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Furthermore, the Court explained that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 599 (E.D. Pa. 2015); *see also Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). As the Supreme Court has explained, although "Rule 8 marks a notable

and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 556 U.S. at 678–79. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. In *Twombly,* the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" 550 U.S. at 555. "[B]oilerplate and conclusory allegations will not suffice." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

### B.    Standard of Review for Fraud Claims

Under Fed. R. Civ. P. 9(b), there is a heightened standard applicable to fraud claims. *Id.* at 68. In all averments of fraud or mistake, under the Rule, the circumstances constituting fraud or mistake must be stated with particularity. In addition to the stringent standard of Rule 12(b)(6), Rule 9(b)'s particularity requirement is rigorously applied in motions to dismiss alleging fraud, including securities fraud. *Suna v. Bailey Corp.*, 107 F.3d 64, 68–69 (1st Cir. 1997). The Rule requires that, at a minimum, "plaintiffs support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 276 (3d Cir. 2006) (quoting *In re Rockefeller Center Prop. Sec. Litig.,* 311 F.3d 198, 217 (3d Cir. 2002)).

The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (Fed. R. Civ. P. 9(b), which imposes a heightened pleading standard for fraud claims, applies not only to fraud actions under federal statutes, but to state law fraud claims as well); *DiMare v. MetLife Ins. Co.*, 369 Fed. App'x 324, 329-30 (3d Cir.

2010).  One goal of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard . . . from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit."  *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). A complaint making such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).  Generally speaking, plaintiffs should allege particular "'times, dates, places or other details of the alleged fraudulent involvement of actors.'" *Gross v. Summa Four, Inc.,* 93 F.3d 987, 991 (1st Cir.1996) (citation omitted).  For example, where plaintiffs in another case allege that defendants distorted certain data disclosed to the public by using unreasonable accounting practices, courts in this Circuit required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data.  *See Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284–85 (3rd Cir. 1992).

Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements. *See Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994); *In re Burlington Coat Factory,* 114 F.3d at 1418 (noting "the goals of Rule 9(b), which include the deterrence of frivolous litigation based on accusations that could hurt the reputations of those being attacked."); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (dismissing Frederico's common law fraud complaint because "Frederico does not state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations."); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2nd Cir.1989); *Odesser v.*

*Vogel*, No. CIV.A. 85-6931, 1986 WL 4463, at *3 (E.D. Pa. Apr. 10, 1986) (granting motion to

dismiss fraud claim which requires precision and substantiation of allegations of fraud).

## SUMMARY OF ARGUMENT

### POINT I

### COUNT III FOR AIDING AND ABETTING FRAUD SHOULD BE DISMISSED

**A.    Count III for aiding and abetting fraud should be dismissed because plaintiff failed to plead the claim for fraud with sufficient particularity.**

Plaintiff's claim for aiding and abetting fraud against Defendant Leaman should be

dismissed for multiple reasons.  As an initial matter, Plaintiff's claim for aiding and abetting fraud

should be dismissed as to Defendant Leaman because Plaintiff has failed to state the claim for

aiding and abetting the alleged fraud as to Defendant Leaman with sufficient particularity as

required under Fed. R. Civ. P. 9(b).

Fed. R. Civ. P. 9(b) sets forth a heightened pleading requirement for all claims of fraud,

and courts have held this applies equally to claims alleging aiding and abetting fraud.  *Gordon v.*

*Diagnostek, Inc.*, 812 F. Supp. 57, 62 (E.D. Pa. 1993) (explaining that substantial participation in

a fraud must be pled with particularity pursuant to Fed. R. Civ. P. 9(b) and dismissing aiding and

abetting fraud claim for failure to plead substantial participation with particularity); *Artesanias*

*Hacienda Real S.A. de C.V. v. N. Mill Cap. LLC*, No. CV 16-4197, 2021 WL 12315467, at *1 n. 1

(E.D. Pa. Aug. 19, 2021) (dismissing the aiding and abetting fraud and fraudulent concealment

claim for failure to state a claim and failure to plead with particularity).

In *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96 (1983), the Plaintiff filed a

complaint seeking money damages on behalf of a putative class of purchasers of shares of First

Pennsylvania Mortgage Trust, alleging that in issuing annual reports of the financial condition of

the Trust for four fiscal years, the defendants violated the anti-fraud provisions of several federal

-8-

securities acts. Christidis's general allegation was that the financial statements understated the reserves which the Trust should have accrued for bad debts. *Id.* at 98. The Court dismissed the claim for failure to allege the fraud with sufficient specificity under 9(b), which the Third Circuit affirmed. *Id.* at 97. In *Christidis*, the Third Circuit Court explained that fraud could only be established in that case if "the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable accounting practices[]" but "[w]hat those practices are and how they were departed from is nowhere set forth[]" in the Complaint. *Id.* at 100.

Similar to the Complaint dismissed in *Christidis*, in the case at bar, the Plaintiff wholly failed to allege the "what" and the "how" of Leaman's alleged "aiding and abetting." Instead, Plaintiff alleges solely that Leaman "substantiated assisted Heller in the misuse of investor capital" on page 21 of the Complaint without any detail as to what or how Leaman allegedly did. Compl. ¶¶ 113-20. Plaintiff claims that Leaman managed "Paramount's banking relationship with First National Bank" but does not allege why or how that would have aided or abetted any fraud between Prestige Funds, and its executives and investors. *Id.* at ¶ 115. The Complaint further alleges that Leaman "assisted Paramount with its relationship with Pathward" without explaining how or why that aided or abetted an alleged fraud. *Id.* at ¶ 116. The Complaint also alleges a text exchange suggested that Leaman texted regarding disposing of unused ATMs at a warehouse. *Id.* at ¶¶ 119-20. However, the Complaint does not – nor could – suggest that this text or any correspondence or communication reflects any knowing, substantial assistance with any alleged fraud by the Prestige Fund Defendants. None of this is sufficient to state a claim for aiding and abetting fraud, as none of it suggests that there is any knowing or substantial assistance with any alleged fraud by Defendant Leaman.

**B.      The Complaint should be dismissed because it fails to state a claim for which relief can be granted.**

In addition to failing to plead with the requisite particularity, the Complaint should also be dismissed because it fails to state a claim for aiding and abetting fraud.

To state a claim for aiding and abetting fraud, the Complaint must state that the allege defendant knew of another's fraud and substantially assisted. Restatement (Second) of Torts § 876(b) (1979). To state a claim for aiding and abetting fraud, a plaintiff must sufficiently allege: (1) the existence of fraud by a third party; (2) that defendant had "actual knowledge of the fraud;" and (3) that defendant provided "substantial assistance or encouragement" to the party committing the fraud. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 89 (Pa. 2023).

There are numerous additional instances of courts in the Third Circuit dismissing claims of alleged aiding and abetting fraud where allegations are conclusory and lack factual basis, such as here. In *Van Horn, Metz & Co. v. JPMorgan Chase & Co.*, No. CV 23-1693, 2025 WL 968307, at *2 (E.D. Pa. Mar. 31, 2025), the Court dismissed a complaint where there were no allegations that Chase had flagged or otherwise suspected fraud. The Court found that "[a]fter setting aside the conclusory allegations of actual knowledge in the Amended Complaint," the complaint was "factually insufficient to defeat the motion to dismiss[]" because "[a]ssuming the truth of the well-pleaded allegations and construing them in Van Horn's favor, the Court finds that, at most, the Amended Complaint reasonably permits the inference that Chase should have known about the fraud, not that Chase actually knew about it." *Id*. The Court explained "Chase's knowledge that there were transfers from Van Horn's PNC business accounts to Crisafulli's personal Chase accounts is not tantamount to actual knowledge of fraud." *Id*.

Similarly, in *August Uribe Fine Art, LLC v. Dartmilano SRL*, No. CV223104KMJBC, 2023 WL 2644447, at *8–9 (D.N.J. Mar. 27, 2023), the Court dismissed a complaint for aiding and

abetting fraud where the Complaint was "devoid of facts which, if true, would establish that Fracassi knowingly and substantially assisted a third party's fraud on" August Uribe Fine Art, LLC ("UFA"). *Id.* at *8. The Court noted that the Complaint alleged that Fracassi was "plac[ed] the artwork in Oblyon's account at the New Jersey warehouse." *Id.*  However, the Complaint failed to sufficiently allege Fracassi's knowledge that it was participating in or facilitating a fraud, other than containing a conclusory allegation of "knowing and substantial participation of Fracassi, Oblyon, and Art Lending." *Id.* (quoting the Complaint). Because there were no <u>facts</u> to support that Fracassi substantially assisted in the fraud or knowledge of the fraud, the involvement as alleged was "no more than ministerial." *Id.* Accordingly, the Court dismissed the aiding and abetting fraud claim for failure to state a claim.  *Id.* at *9.  Similarly, in this case, the allegations as to Leaman – i.e. that he "manag[ed] Paramount's banking relationship with First National Bank," and "assisted Paramount with its relationship with Pathward" which served as an "independent sales organization." Compl. ¶¶ 115-16. Yet those allegations relate to his duties as CEO generally and do not support a "knowing" or "substantial" participation in an alleged fraud. *Id.*

In *Gould Ventures, LLC v. Cooley LLP*, No. CV 24-9485 (RK) (TJB), 2025 WL 1482493, at *16 (D.N.J. May 23, 2025), the Court granted a motion to dismiss and aiding and abetting fraud claim where Plaintiffs allege that Defendants confirmed the existence of D&O insurance despite having no evidence that such insurance existed.  *Id.* at *16.  However, Plaintiffs failed to allege that the Defendants *knew* that *Carbon IQ* did not have D&O insurance and therefore dismissed the fraud claim.  *Id.*  Here, Plaintiff alleges that Leaman texted regarding disposal of some ATMs in a warehouse, which, like in *Gould Ventures*, is purely an allegation of a ministerial act and does not show or even claim that Leaman knew of any alleged fraud relating to same.  Compl. ¶ 119.

Furthermore, the Complaint alleges that Leaman "drew a $350,000 salary as Paramount's CEO, [and] also took 'ownership draws,' including to purchase a beach vacation home," and that he and Heller received vehicles from Paramount. *Id.* at ¶ 81-82. None of this is sufficient to sustain a claim that Leaman "aided and abetted" a fraud to operate a Ponzi scheme to defraud Prestige Fund investors because it is without question that a CEO of a corporation would draw a salary, and a business automobile would be nothing unusual. *See, e.g., Van Horn,* 2025 WL 968307, at *2 ("using company funds to make personal credit card payments is not inherently unusual and cannot shoulder the plausibility burden to show actual knowledge."); *DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co.*, 388 F.3d 886, 895 (D.C. Cir. 2004) (observing that defendant "had no reason to suspect fraud because it is not unusual for employers to pay the credit card debts of their employees"); *Hartford Acc. & Indem. Co. v. Am. Exp. Co.*, 542 N.E.2d 1090, 1095 (1989) (describing an employee's payment of personal credit card using company checks as an "innocuous act" because "the use of corporate checks to pay employees' debts 'is an every day occurrence in the business world.'").

The Complaint fails to state a claim against Leaman for "aiding and abetting fraud" because it fails to allege knowledge or substantial assistance by Defendant Leaman specifically in the alleged fraud. Because the Plaintiff cannot possibly meet the standard, this claim should further be dismissed with prejudice.

## POINT II

### COUNT III FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

Count III for aiding and abetting breach of fiduciary duty should be dismissed as to Defendant Leaman.

**A.    Count III for aiding and abetting fiduciary duty should be dismissed because Plaintiff failed to plead the claim with sufficient particularity.**

Courts have explained that aiding and abetting breach of fiduciary duty claims are subject to Rule 9(b) where the underlying primary violation is based on an alleged fraud. *Kolbeck v. LIT America, Inc.,* 939 F. Supp. 240, 245 (S.D.N.Y.1996) (citing *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847–48 (2d Cir.1987)) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim because the underlying primary violation was based on fraud).  Accordingly, the claim for aiding and abetting breach of fiduciary duty should be dismissed for all of the reasons previously discussed in Point I(A), including that Plaintiff failed to allege with any specificity any knowing violation of any alleged fiduciary duty or substantial assistance with any alleged breach of any fiduciary duty.

In purported support of the Count for aiding and abetting a breach of fiduciary duty against Defendant Leaman, the Complaint merely states that "Defendant Leaman substantially assisted the Prestige Funds fraud by serving as Paramount's COO and CEO. In these roles, Leaman assisted Heller in, amongst other things, misusing investor capital to cover mounting invoices. Leaman also misappropriated investor funds for his own personal benefit." Compl. ¶ 169. These allegations are without substance and merely parrot legal jargon used in the alleged fraud count as well, also without any facts or specificity.  It is not alleged in any way with any specificity what Plaintiff refers to in the allegation of Leaman "misusing investor capital to cover mounting invoices." *Id.* Nothing specific is alleged regarding what these supposed invoices are, what they were for, or what alleged investor capital was used by Leaman allegedly with respect to these invoices, or when.  Merely reciting the elements of the cause of action without <u>any</u> facts or particularity in support is insufficient under both Rule 12(b)(6) and certainly under Rule 9(b) as well.

11182119.1

**B.    Count III for aiding and abetting fiduciary duty should be dismissed because Plaintiff failed to state a claim upon which relief can be granted.**

The claim for aiding and abetting a breach of fiduciary duty should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff has failed to allege the requirements of such a claim as to Defendant Leaman specifically.

In *Marion v. Bryn Mawr Trust Co.*, the Supreme Court of Pennsylvania explained that to state a claim for aiding and abetting fraud and/or breach of fiduciary duty, the aider/abettor must have had *actual knowledge* . 288 A. 3d at 87. The Court further explained that "a party must provide substantial assistance or encouragement to the primary actor." *Id*. In that case, the Court explained that the "actual knowledge" requirement for proving liability for the cause of action would protect against "litigation mischief" by plaintiffs in search of deep-pocketed defendants." *Id*. at 81. The Court explained that "innocent actors" will not be subject to liability because "a party must provide substantial assistance or encouragement to the primary actor. Unwitting or uncooperating actors will not face liability." *Id.* at 87. Therefore, arguments that a secondary actor "should have known" or "disregarded red flags" about the alleged activity are insufficient to demonstrate culpability under Pennsylvania law. *Id*. at 81.

Under that section of the Restatement, Section 876, Persons Acting in Concert:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) Torts § 876(b).

In the case at bar, Plaintiff names all Defendants, including Hostetter, Joffrey, Zook and Leaman, in the claim for aiding and abetting breach of fiduciary duty, even though only Hostetter, Joffrey, and Zook are named in the counts for violation of Pennsylvania Securities Act 1-401(b)

-14-

and 1-503(a) (Count I) and violation of Pennsylvania Securities Act 1-201 (Count IV). Compl. pp.

27, 31. Defendants Jeffery Hostetter, Mir Jafer Ali Joffrey, and David Zook were all "executive

officers" of the Prestige Funds.  The Complaint alleges that Hostetter was "an Executive Officer

of each of the Prestige Funds with the exception of Prestige Fund D LLC." *Id.* at ¶ 16. Joffrey was

an Executive Officer of each of the Prestige Funds with the prefix "WF Velocity Fund." *Id.* at ¶

17.  Zook was an "Executive Officer of Prestige Fund A II LLC, Prestige Fund A V LLC, Prestige

Fund A VI LLC, Prestige Fund A VII LLC, and all of the Prestige Fund D iterations. *Id.* at  ¶ 18.

These three individual's titles have nothing to do with Leaman or his role as "a minority owner of

Paramount [who] served as Paramount's Chief Operating Officer ('COO') from 2011 until he was

promoted to Chief Executive Officer ('CEO') in 2022."  Compl. ¶ 24.  The Complaint notes that

the "*Prestige Funds owed a fiduciary duty to Plaintiff and the Class* because the Prestige Funds

purported to have expertise in the investments they sold to Plaintiff and the Class, because the

Prestige Funds understood that Plaintiff and members of the Class did not have such expertise, and

because *the Prestige Funds solicited and held Plaintiff's and the Class' investment monies*

purportedly for Plaintiff's and members of the Class' benefit. Such fiduciary duties included the

duty to act in Plaintiff's and the Class' best interests."  Compl. ¶ 164 (emphasis added).  Plaintiff

alleges that the officers of the Prestige Funds had fiduciary duties to their investors and violated

those fiduciary duties. The only allegations regarding Leaman and the alleged aiding and abetting

breach of fiduciary duty claims are insufficient.  Plaintiff alleges that Defendant Leaman, in his

role "as COO and CEO of Paramount and ownership and control thereof—had actual knowledge

that the Prestige Funds were not acting in Plaintiff's or the Class' best interest by misusing investor

capital." Compl. ¶ 166.  This is the exact same "threadbare" "recitals of the elements of a cause of

action, supported by mere conclusory statements" that was contained in the claim for aiding and abetting fraud and that does not suffice to withstand Rule 12(b)(6) generally.

As stated previously, in the breach of fiduciary duty count, the Complaint contains an allegation against Leaman that merely states that "Defendant Leaman substantially assisted the Prestige Funds fraud by serving as Paramount's COO and CEO. In these roles, Leaman assisted Heller in, amongst other things, misusing investor capital to cover mounting invoices. Leaman also misappropriated investor funds for his own personal benefit." Compl. ¶ 169. These completely unsubstantiated allegations merely parrot legal jargon but do not provide the requisite facts in support. There are no facts pled relating to the alleged misuse of investor capital to cover "mounting invoices" or misappropriation of any alleged "investor funds." Mere recitation of the requirements of a cause of action without more is patently insufficient to state a claim under both Rule 12(b)(6) and Rule 9(b). The only other allegation in the text of the Complaint state "Leaman and Heller used investor money siphoned to Paramount to fund lavish purchases." Compl. ¶ 80. The Complaint then lists that Leaman drew a "$350,000 salary as Paramount's CEO" and took "ownership draws," including to purchase a beach vacation home in New Jersey. *Id.* at ¶ 81. The Complaint also references using "Paramount funds to purchase luxury vehicles including an Audi RS7, a Cadillac SUV, a Ferrari, and a Mercedes that Leaman 'purchased' from Paramount for just $1." *Id.* at ¶ 82. These allegations do not support any knowing or substantial assistance with any breach of fiduciary duty. *See, e.g., Van Horn,* 2025 WL 968307, at *2; *DBI Architects, P.C*, 388 F.3d at 895; *Hartford Acc. & Indem. Co.*, 542 N.E.2d at 1095 (describing an employee's payment of personal credit card using company checks as an "innocuous act" because "the use of corporate checks to pay employees' debts "is an everyday occurrence in the business world."). There is no allegation that Mr. Leaman knew of any breach of fiduciary duty or provided any substantial

-16-

knowing assistance of any such alleged breach by the Prestige Funds.  This Court should dismiss the claim against Leaman because it fails to state a claim for which relief can be granted.  Because the Plaintiff cannot possibly meet the standard, this claim should further be dismissed with prejudice.

11182119.1

## CONCLUSION

For the foregoing reasons, Defendant Leaman's Motion to Dismiss should be granted and

the Complaint should be dismissed as to Leaman with prejudice.

Respectfully submitted,

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Attorneys for Defendant Randall Leaman

By: _____
          MEREDITH C. SHERMAN

Metro Corporate Campus One
99 Wood Avenue South
Iselin, New Jersey  08830-2712
(732) 549-5600
msherman@greenbaumlaw.com
Attorneys for Defendant Randall Leaman

Dated: December 5, 2025

-18-