## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| Batman Investments LLC, individually and on behalf of all others similarly situated, | : | CIVIL ACTION |
| | : | |
| | : | NO. 5:25-cv-04911-CH |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| Jerry Hostetter, | : | |
| Mir Jafer Ali Joffrey (a/k/a Buck Joffrey), | : | |
| Randall Leaman, and | : | |
| David Zook, | : | |
| Defendants. | : | |
| | : | |

## BRIEF IN SUPPORT OF DEFENDANT DAVID ZOOK'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

**COHEN, SEGLIAS, PALLAS,
GREENHALL & FURMAN, P.C.**

Christopher D. Carusone, Esquire, ID# 71160
Benjamin D. Hartwell, Esquire, ID# 321003
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
Phone: (215) 564-1700
Email: ccarusone@cohenseglias.com
　　　 bhartwell@cohenseglias.com

**KELLEY CLARKE PC**

Matthew M. Clarke, Esquire (*pro hac vice*)
603 E. Broadway Street
Prosper, TX 75078
Phone: (972) 253-4440
Email: matt@kelleyclarke.com

**BALLARD SPAHR LLP**

David L. Axelrod, ID# 323792
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 864-8639
Email: axelrodd@ballardspahr.com

*Attorneys for Defendant David Zook*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

    I.   THE PRESTIGE FUNDS AND PLAINTIFF'S PARTICIPATION THEREIN ....................................... 3

    II.  THE CRIMINAL AND SEC CIVIL ENFORCEMENT ACTIONS AGAINST HELLER ...................... 4

    III. PLAINTIFF'S ALLEGATIONS  AND CLAIMS AGAINST ZOOK ................................................... 5

ARGUMENT .................................................................................................................... 5

    I.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998 .................................................................. 5

    II.  THE COMPLAINT FAILS TO OTHERWISE STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ............................................................................................................. 9

         A. Counts I, II, and III Are Subject to the Heightened Pleading Standards of Rule 9(b) ........................................................................................................................ 10

         B. Plaintiff Cannot Adequately Plead a "Control Person" Claim ................................. 11

         C. Plaintiff Has Not Sufficiently Pled Zook Had Actual Knowledge of a Fraud or Breach of Fiduciary Duty ....................................................................................... 16

         D. Plaintiff Was Not Owed Any Fiduciary Duties .......................................................... 18

         E.  Plaintiff Has Not Adequately Pled a Section 1-201 Claim ....................................... 19

CONCLUSION ................................................................................................................ 22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
　　180 F.3d 525 (3d Cir.1999)................................................................................................10

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)...................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)........................................................................................................9

*Byers v. Pennsylvania Department of Banking and Securities, Bureau of
　　Securities Compliance and Examinations,*
　　259 A.3d 551 (Pa. Cmmwlth. Ct. 2021) ...............................................13, 14, 15, 16

*In re Burlington Coat Factory Sec. Litig.*,
　　114 F.3d 1410 (3d Cir.1997)..........................................................................................10

*Chadbourne & Parke LLP v. Troice*,
　　571 U.S. 377, 380 (2014) ................................................................................................6

*Chanana's Corp. v. Gilmore*,
　　539 F. Supp. 2d 1299 (W.D. Wash. 2003)....................................................................21

*Claude Worthington Benedum Foundation v. Bank of New York Mellon
　　Corporation,*
　　422 F. Supp. 3d 940 (W.D. Pa. 2019).........................................................................10

*Daniel Boone Area School District v. Lehman Bros.*,
　　187 F. Supp. 2d 400 (W.D. Pa. 2002)..........................................................................12

*DiLeo v. Ernst & Young,*
　　901 F.2d 624, 627 (7th Cir.1990) ................................................................................10

*In re Forks Specialty Metals Inc.*,
　　2023 WL 3239468 (Bankr. E.D. Pa. April 30, 2023) ...................................................16

*Gilliland v. Hergert*,
　　No. 2:05-cv-01059, 2007 WL 4105223 (W.D. Pa. Nov. 15, 2007).........................12

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
　　131 S. Ct. 2296 (2011)...................................................................................................15

*Joyce v. Bobcat Oil & Gas, Inc.*,
   2008 WL 919724 (M.D. Pa. Apr. 3, 2008) ..................................................................22

*Knopick v. UBS Fin. Servs., Inc.*,
   121 F. Supp. 3d 444 (E.D. Pa. 2015) .....................................................................6, 7

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993)............................................................................................9

*Leder v. Shinfeld*,
   609 F. Supp. 2d 386 (E.D. Pa. 2009) .......................................................................10

*Marion v. Bryn Mawr Trust Company*,
   288 A.3d 76 (Pa. 2023) .......................................................................................16, 18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71, 81 (2006) ...............................................................................................6

*NewSpring Mezzanine Capital II, L.P. v. Hayes*,
   No. CV 14-1706, 2016 WL 7426122 (E.D. Pa. Dec. 23, 2016) ...............................12

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380 (3d Cir. 1994)......................................................................................22

*Penturelli v. Spector Cohen Gadon & Rosen*,
   640 F. Supp. 868 (E.D. Pa. 1986) ............................................................................12

*In re Phar-Mor, Inc. Sec. Litig.*,
   892 F. Supp. 676 (W.D. Pa. 1995)............................................................................12

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008).......................................................................................9

*In re Ressler Hardwoods and Flooring, Inc.*,
   2009 WL 975155 (Bankr. M.D. Pa. Apr. 1, 2009) ..............................................21, 22

*In re Rockefeller Center Properties, Inc. Securities Litigation*,
   311 F.3d 198 (3d Cir. 2002).....................................................................................10

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005).......................................................................................6

*S. Kane & Son Profit Sharing Tr. v. Marine Midland Bank*,
   No. CIV. A. 95-7058, 1996 WL 200603 (E.D. Pa. Apr. 25, 1996) .........................12

*Schor v. Hope*,
   No. CIV. A. 91-0443, 1992 WL 22189 (E.D. Pa. Feb. 4, 1992) .............................12

*In re Suprema Specialties, Inc. Securities Litigation*,
    438 F.3d 256 (3d Cir. 2006)......................................................................................................10

*Zuri-Invest AG v. Natwest Finance Inc.*,
    177 F. Supp. 2d 189, 192 (S.D.N.Y. 2001) ............................................................................21

**Statutes**

6 Del. C. § 18-1101(c) ...............................................................................................................19

70 P.S. § 1-102(b) ......................................................................................................................13

70 P.S. § 1-102(g) ................................................................................................................13, 15

70 P.S. § 1-502..........................................................................................................................20

70 P.S. § 1-503..............................................................................................................11, 12, 13

70 P.S. § 1-504..........................................................................................................................22

15 U.S.C. § 77............................................................................................................................21

15 U.S.C. § 77p(b) .......................................................................................................................7

15 U.S.C. § 77r(a) ......................................................................................................................21

15 U.S.C. § 77r(b)(4) ...................................................................................................................8

15 U.S.C. § 77z-1.........................................................................................................................5

15 U.S.C. § 78u-4 ........................................................................................................................5

15 U.S.C. § 78a............................................................................................................................6

15 U.S.C. § 78bb......................................................................................................................6, 7

15 U.S.C. § 78bb(f)(1) .................................................................................................................7

15 U.S.C. § 78bb(f)(5)(B)............................................................................................................7

15 U.S.C. § 78u-4 ........................................................................................................................6

Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.* .......................................19

National Securities Market Improvement Act of 1996.........................................................21, 22

Pennsylvania Securities Act of 1972 .............................................................................................8

Pennsylvania Securities Act § 1-201 ...............................................................................5, 19, 20, 22

Pennsylvania Securities Act § 1-401 ................................................................................10

Pennsylvania Securities Act § 1-401(b) .............................................................................5

Pennsylvania Securities Act § 1-503(a)..............................................................................5

Private Securities Litigation Reform Act of 1995 ....................................................5, 6, 8

Securities Exchange Act of 1934....................................................................................6, 20

Securities Litigation Uniform Standards Act of 1998 ......................................... *passim*

**Other Authorities**

17 C.F.R. § 230.503(a)......................................................................................................21

17 C.F.R. § 230.506(c)......................................................................................................20

17 C.F.R. § 240.12b-2.......................................................................................................15

H.R. Conf. Rep. No. 104-369, p. 31 (1995)........................................................................6

Fed. R. Civ. P. Rule 8(a).................................................................................................10

Fed. R. Civ. P. Rule 8(a)(2) ..............................................................................................9

Fed. R. Civ. P. Rule 8(c)..................................................................................................22

Fed. R. Civ. P. Rule 9(b)...............................................................................2, 10, 11, 16

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................1, 9, 22, 23

Rule 10b-5 of Regulation D...............................................................................................6

Rule 506(b) of Regulation D.............................................................................................20

Rule 506(c) of Regulation D.............................................................................................20

Defendant David Zook ("Zook"), by and through his undersigned counsel, submits this brief in support of his Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6).

**INTRODUCTION**

Plaintiff Batman Investments LLC brings this putative class action, purportedly on behalf of a group of approximately 2,700 sophisticated investors, to recover losses it alleges were incurred by these investors based on their participation in an investment vehicle called "Prestige," which was structured around the purchase and management of automated teller machines ("ATMs"). Prestige is now alleged, by Plaintiff and others, to have been a Ponzi scheme, run by a man named Daryl Heller. Indeed, six days before this lawsuit was filed, Heller, the founder, organizer, and principal operator of Prestige, was indicted and charged with securities fraud (and other crimes) for making false representations—and causing others to make these representations—to Prestige investors regarding how their capital contributions would be used. Rather than using those contributions to purchase ATMs, as promised, he is alleged to have used new investors' contributions to enrich himself and fulfill monthly payment obligations owed to earlier investors. *See United States v. Daryl F. Heller*, Case No. 5:25-cr-00366-CH. *See also SEC v. Heller*, Case No. 5:25-cv-05036 (alleging that Heller engaged in securities fraud).

Rather than pursue claims against Heller, as it should have, or even pursue the Prestige entities involved, Plaintiff has set its sights on other sets of perceived "deep pockets" to try and recover the putative class's lost investments. It claims that four individual fund executives—David Zook, Jerry Hostetter, Mir Jafer Ali Joffrey (a/k/a Buck Joffrey), and Randall Leaman— substantially aided Heller and Prestige in perpetuating the alleged fraud. It asserts common law claims against them for aiding and abetting Prestige in committing both fraud and breaches of fiduciary duty. It also asserts statutory claims against Zook, Hostetter, and Joffrey, seeking to hold them liable for alleged violations, by Prestige, of Pennsylvania's securities laws.

1

Plaintiff's claims must fail for a number of reasons. First, and perhaps most critically, class actions predicated on securities fraud, yet asserting solely state law claims, are barred by the Securities Litigation Uniform Standards Act of 1998. This fatal flaw necessitates dismissal of the Complaint in its entirety. But even if Plaintiff's state law claims could avoid federal preemption, they cannot stand on their own merits based on the facts alleged. Actions predicated on fraud generally, and securities fraud more specifically, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiff's allegations come nowhere close to meeting this heightened pleading standard, particularly with respect to Defendant Zook. For example, Plaintiff's aiding and abetting claims are premised on the notion that Zook must have, due to his position with Prestige, known about the fraud Heller was perpetrating on investors. But aiding and abetting claims require particularized allegations of actual knowledge. There are no such allegations in the Complaint, nor could there be given that Zook, too, was a victim of Heller's scheme.

Plaintiff's state statutory claims suffer from additional defects, each of which represents an independent basis for dismissal. For instance, Plaintiff seeks to hold Zook liable for Prestige's alleged fraud in the sale of a security based on his role as a "control person" of Prestige, yet there exists no independent, direct right of action for control person liability. Similarly, Plaintiff seeks to hold Zook liable for failing to comply with Pennsylvania registration laws, despite the fact that the securities were exempt from state registration requirements; additionally, such a claim is barred by the statute of limitations.

Because Heller, according to the Indictment and SEC Complaint, is the party Plaintiff should actually pursue, Plaintiff cannot successfully plead its claims against Zook.

## BACKGROUND[1]

### I.    THE PRESTIGE FUNDS AND PLAINTIFF'S PARTICIPATION THEREIN

This case concerns a series of investment funds, founded by Daryl Heller, called the "Prestige Funds." Prestige offered investors the opportunity to invest in the purchase and management of ATMs in exchange for a share of the revenue generated from those ATMs. Compl. ¶ 1-2. It effectuated this model by engaging a company called Paramount Management Group ("Paramount") to purchase and manage the ATM portfolio. *Id.* at ¶ 3. Heller maintained ultimate ownership and control over both Prestige and Paramount. *Id.* at ¶ 23.

Prestige was comprised of numerous separate investment vehicle limited liability companies (the "Funds"). *Id.* at ¶ 14. In or around October 2022, Plaintiff invested $2,080,000 in one of the Funds, called Prestige Fund A VI, LLC. *Id.* at 121. While some of the Funds offered investors the opportunity to become members of the associated LLC, Prestige Fund A VI, LLC did not confer any ownership interest to investors:

> The nature of this investment opportunity is of a commercial nature only. An Investor will not become a limited liability company member of, or otherwise, obtain any ownership interest or capital interest in Prestige Fund A VI or any affiliate of Prestige Fund A VI through this offering. The nature of an Investor's commercial relationship with Prestige Fund A VI will be as set forth in and subject to that Venture Agreement included herewith (the "***Venture Agreement***"). Any reference to or discussion of the

Exhibit A, Private Placement Memorandum, p. 2. Regardless of their type of investment, every Plaintiff received a subscription packet containing documents that governed their participation in the Funds. Compl. ¶ 147. Those packets included a summary document, called a "Private Placement Memorandum" ("PPM"), as well as contracts, referred to as "Subscription Agreements," signed by each investor. *Id.*

---

[1] Citations to the Complaint are not concessions of the truth of the facts alleged. Rather, for purposes of a motion to dismiss, the Court must accept all factual allegations in the Complaint as true.

## II.    THE CRIMINAL AND SEC CIVIL ENFORCEMENT ACTIONS AGAINST HELLER

On August 21, 2025, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Heller with one count of securities fraud and four counts of wire fraud (hereinafter the "Heller Indictment"). *United States v. Heller*, 25-cr-00366, ECF 1. The Heller Indictment, which was filed six days before the instant lawsuit, sets out Heller's role in the fraud alleged in this case, as follows:

- "HELLER solicited, and caused others, including Persons #1, #2, #3, and #4, to solicit investments in the Prestige . . . Funds." Heller Indictment at 4.

- "Heller represented, and caused others to represent, to the Prestige and WF Velocity ATM FUND investors . . . [i]n return for their investments, investors would receive a fixed payment every months for approximately seven years . . . ." Heller Indictment at 6.

- "Heller solicited, and caused others to solicit, millions of dollars in funds from the Prestige and WF Velocity ATM Fund investors based on materially false and fraudulent pretenses, representations, and promises, including that: (i) the money invested by Prestige and WF Velocity ATM Fund investors would be used by Paramount to purchase ATMs on behalf of the investors . . . ." Heller Indictment at 16.

In addition to his federal indictment, the SEC has also sued Heller for securities fraud. The SEC's lawsuit sums up Heller's activity succinctly: "From at least January 2017 through June 10, 2024, Defendants Daryl F. Heller . . . perpetrated a Ponzi-like scheme exploiting retail investors. . . . Heller misappropriated approximately $185 million of investor funds for his own benefit, including for personal expenses, like a beach house on the New Jersey shore, and to finance other businesses he owned." *SEC v. Daryl Heller, et al.*, 25-cv-05036, ECF 1 at ¶¶ 1-2.

4

III.    **PLAINTIFF'S ALLEGATIONS AND CLAIMS AGAINST ZOOK**

Zook is the Founder and CEO of an investment and syndication firm call The Real Asset Investor, LLC ("RAI"). Compl. ¶ 83. Through RAI, Zook promoted the Prestige program to his network of sophisticated investors. *Id.* at ¶ 84. His promotional activities are alleged to have included developing and disseminating marketing materials, conducting investment presentations, webinars, and seminars across the country, and assisting investors, including Plaintiff, in securing loans to fund their investments. *Id.* at ¶¶ 88, 95, 123.

Plaintiff claims, however, that "Zook's role was more than mere independent promoter of the Prestige Funds." *Id.* at ¶ 85. Specifically, Plaintiff claims that Zook was an "executive officer" of many of the Funds and that his company, RAI, had an ownership stake in some of the Fund managers. *Id.* While Plaintiff does not allege any further details about Zook's supposed inside role with the Funds, it claims that through his "ownership and control stake" in the Funds and Fund managers, "Zook gained knowledge of the Prestige Fund's operations, including the use (and misuse) of investor capital and the true extent (or lack thereof) of the Prestige Funds' ATM portfolio." *Id.* at ¶ 87.

In this action, Plaintiff purports to assert the following claims against Zook and the other Defendants: Count I, Violation of the Pennsylvania Securities Act § 1-401(b) and § 1-503(a); Count II, Aiding and Abetting Fraud; Count III, Aiding and Abetting Breach of Fiduciary Duty; and Count IV, Violation of Pennsylvania Securities Act § 1-201.

**ARGUMENT**

I.    **PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998**

In 1995, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified at 15 U.S.C. §§ 77z-1 and 78u-4, to target "perceived abuses of the class-action vehicle

in litigation involving nationally traded securities." *See Knopick v. UBS Fin. Servs., Inc.,* 121 F. Supp. 3d 444, 454 (E.D. Pa. 2015) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 81 (2006)). The PSLRA was designed to reduce "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers" by, among other things, "limiting recoverable damages and attorney's fees" and "authorizing a stay of discovery pending resolution of any motion to dismiss." *Id.* (citing *Dabit*, 547 U.S. at 81). *See also* H.R. Conf. Rep. No. 104-369, p. 31 (1995); 15 U.S.C. § 78u-4. The PSLRA "also imposes heightened pleading requirements in actions brought pursuant to § 10(b) [of the Securities Exchange Act of 1934] and [the Securities Exchange Commission's] Rule 10b-5." *Knopick,* 121 F. Supp. 3d at 456 (citing *Dabit*, 547 U.S. at 81; *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 298 (3d Cir. 2005)).

Given the restrictive nature of the PSLRA, putative class representatives started avoiding federal claims altogether by bringing class actions solely under state law, often in state court. *Id.* (quoting *Dabit*, 547 U.S. at 82). "By 1998, Congress concluded that plaintiffs were circumventing the requirements of the PSLRA" and passed legislation "designed to close this perceived loophole by authorizing the removal and federal preemption of certain state court securities class actions." *Id.* (quoting *Rowinski,* 398 F.3d at 298). *See also* 15 U.S.C. § 78a. The Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb, "forbids the bringing of large securities class actions based upon violations of state law." *Knopick,* 121 F. Supp. 3d at 456 (quoting *Chadbourne & Parke LLP v. Troice,* 571 U.S. 377, 380 (2014)). "If the action is precluded, neither the district court nor the state court may entertain it, and the proper course is to dismiss." *Id.* at 456. "Both the Supreme Court and the Third Circuit Court of Appeals have endorsed a broad reading of SLUSA." *Id.* at 455. *See also Rowinski,* 398 F.3d at 299. ("[I]t remains

the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.").

The SLUSA provides, in relevant part:

**(b) Class action limitations**

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
> > (1) An untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). In other words, "a court must dismiss (1) a covered class action (2) brought under state statutory or common law (3) alleging a misrepresentation or omission of a material fact (4) in connection with the purchase or sale (5) of a covered security." *Knopick,* 121 F. Supp. 3d at 456.

All five elements of SLUSA preemption are satisfied in this case. First, the instant action qualifies as a "covered class action." That term is defined, in relevant part, as a securities lawsuit "in which damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class . . . . predominate over any questions affecting only individual persons or members[.]" 15 U.S.C. § 78bb(f)(5)(B). *See also* 15 U.S.C. § 78bb(f)(1). Since the purported class in this case is alleged to include approximately 2,700 investors, and since Plaintiff alleges, as it must, that common

7

questions of law or fact predominate over questions affecting individual persons or members,[2] this requirement is easily satisfied from the face of the complaint. Compl. ¶¶ 133, 135.

Second, there is no doubt that this action is brought exclusively under state statutory and common law. Counts I and IV allege violations of the Pennsylvania Securities Act of 1972 ("PSA"), and Counts II and III allege common law claims of aiding and abetting fraud and breaches of fiduciary duty.

The third and fourth, and fifth elements are also satisfied from the face of the Complaint. Plaintiff alleges that it and other investors in the Funds relied upon misleading statements of material fact contained within PPMs to make their investment decisions. Compl. ¶¶ 33-40. They further allege, in Counts I and IV, that the interests conveyed to them in exchange for their capital investments in the Funds constituted "securities" subject to the PSA. *Id.* at ¶ 172 ("The Prestige Fund investments that Defendants Hostetter, Joffrey, and Zook offered and sold to Plaintiff and the Class were securities."). These securities were "covered securities" within the meaning of the SLUSA because they were exempt from registration under Regulation D of the Securities Act. *See* Exhibit A, Private Placement Memorandum, p. 1; 15 U.S.C. § 77r(b)(4) (defining "covered security" to include, *inter alia*, securities that are exempt from registration).

This putative class action, which has been filed in federal court yet asserts only state law claims, is barred by the SLUSA's preemption doctrine. While Plaintiff may wish to avoid the stringent requirements of the PSLRA, it cannot do so by repackaging its federal securities claims into state law claims. The Complaint must be dismissed in its entirety.

---

[2] Zook reserves his right to dispute the issues of commonality and predominance at the class certification stage.

## II.    THE COMPLAINT FAILS TO OTHERWISE STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even if SLUSA preemption did not bar this action, Plaintiff's Complaint would nevertheless be ripe for dismissal because Plaintiff has not adequately pled any cause of action upon which relief may be granted.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the sufficiency of the allegations contained in a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and this statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a)(2). Ultimately, to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555).

When evaluating a motion to dismiss, a court must accept as true only the well-pleaded allegations of fact in a complaint, together with reasonable inferences drawn therefrom. *See Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). The court must determine if the properly-pled "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief." *Id.* (quoting *Iqbal,* 566 U.S. at 679). "[A] complaint

9

must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips,* 515 F.3d at 234-35).

### A.    Counts I, II, and III Are Subject to the Heightened Pleading Standards of Rule 9(b)

In addition to the pleading requirements of Rule 8(a), Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This particularity requirement must be rigorously applied in securities fraud cases. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417 (3d Cir.1997). Plaintiffs asserting fraud claims must specify "the who, what, when, where, and how: the first paragraph of any newspaper story." *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). This framework sets a high bar for plaintiffs at the pleading stage of a securities fraud case. "[U]nless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) . . . they may not benefit from inferences flowing from vague or unspecific allegations." *In re Rockefeller Center Properties, Inc. Securities Litigation,* 311 F.3d 198, 224 (3d Cir. 2002).

The heightened pleading standard of Rule 9(b) applies to all claims that sound in fraud, even if not expressly styled as "fraud" claims. The inquiry is not whether a claim is labeled in the complaint as fraud or whether it mechanistically recites the elements of fraud but, rather, whether the claim is premised on allegations of fraud. *See In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256 (3d Cir. 2006). Claims styled as state statutory securities violations, breaches of fiduciary duty, and common law fraud have all been held to the heightened pleading standards of Rule 9(b) when sounding in fraud. *See, e.g.*, *Leder v. Shinfeld*, 609 F. Supp. 2d 386, 396 (E.D. Pa. 2009) (applying Rule 9(b) to claims of both common law fraud and alleged violations of Section 1-401 of the Pennsylvania Securities Act); *Claude Worthington Benedum Foundation*

10

*v. Bank of New York Mellon Corporation*, 422 F. Supp. 3d 940, 945 (W.D. Pa. 2019) (applying Rule 9(b) to breach of fiduciary duty claim).

As a threshold matter, Counts I, II, and III of Plaintiff's Complaint are subject to Rule 9(b)'s heightened pleading standard. Notwithstanding any stylistic differences between these three counts, they are all predicated on the same two fundamental allegations: (1) the Funds perpetrated a fraud upon investors; and (2) Defendants, by aiding and/or controlling the Funds in this endeavor, are liable for that fraud. *See* Compl. ¶¶ 146, 152 (alleging that the Funds violated Section 1-401(b) of the PSA by disseminating misleading PPMs to investors, and that Defendants Zook, Hostetter, and Joffrey are liable for this conduct as "control persons" of the Funds pursuant to Section 1-503(a) of the PSA), ¶¶ 160-61 (alleging that all four Defendants aided and abetted the Funds in committing common-law fraud "by serving as Executive Officers" and "raising substantial capital" for the Funds), and ¶¶ 167-68 (alleging that all four Defendants aided and abetted the Funds in breaching their fiduciary duties to investors, again, "by serving as Executive Officers" and "raising substantial capital" for the Funds). Accordingly, all three claims sound in fraud and must be scrutinized against the heightened pleading standard of Rule 9(b).

### B.    Plaintiff Cannot Adequately Plead a "Control Person" Claim

In Count I, Plaintiff claims that Zook, Hostetter, and Joffrey are liable for statutory securities violations committed by the Funds. *Id.* at ¶ 152. This claim is predicated on the notion that Zook, Hostetter, and Joffrey were "control persons" of the Funds, within the meaning of Section 1-503(a) of the PSA, because they were "officers, founders, and/or managing members with the power to influence and direct the operations and statements of the Prestige Funds." *Id.* This "control person" theory fails as a matter of law. As explained below, Section 1-503 does not create a direct, private right of action and, even if it did, Plaintiff's allegations would be insufficient to state a cognizable claim for control person liability.

11

Section 1-503(a) of the PSA provides that when a person or entity commits a securities violation, individuals who control that person or entity may be held jointly and severally liable for those violations under certain circumstances. As an initial matter, Section 1-503 is couched in terms of secondary, rather than primary, liability, and does not expressly provide for a direct right of action against control persons in the absence of an adjudication that the primary violator was liable. *See Daniel Boone Area School District v. Lehman Bros.*, 187 F. Supp. 2d 400, 410 (W.D. Pa. 2002) ("The title [of Section 1-503] is not liability for aiding and abetting, as if such liability could exist separate and apart from an independent determination that some principal were liable under § 501."). Accordingly, several courts within the Third Circuit have found that Section 1-503 does not create an independent, direct cause of action. *See, e.g., id.*; *S. Kane & Son Profit Sharing Tr. v. Marine Midland Bank*, No. CIV. A. 95-7058, 1996 WL 200603, at *2 (E.D. Pa. Apr. 25, 1996) ("no direct cause of action exists under § 1–503"); *In re Phar-Mor, Inc. Sec. Litig.*, 892 F. Supp. 676, 688 (W.D. Pa. 1995); *Schor v. Hope*, No. CIV. A. 91-0443, 1992 WL 22189, at *3 (E.D. Pa. Feb. 4, 1992) (holding that Section 1-503 appears to "contemplate an action by an individual who has been found liable under § 1–501 against other individuals involved in the sale of the securities."); *Penturelli v. Spector Cohen Gadon & Rosen*, 640 F. Supp. 868, 872 (E.D. Pa. 1986) (confirming that "the sole source of private causes of action" in the PSA is Section 1-501).[3] Since Section 1-503 does not afford an independent, direct right of action to private parties, Plaintiff's control person claim (Count I) must be dismissed.

---

[3] Admittedly, decisions in the Third Circuit have been split on the issue. *See, e.g., NewSpring Mezzanine Capital II, L.P. v. Hayes*, No. CV 14-1706, 2016 WL 7426122, at *2 (E.D. Pa. Dec. 23, 2016); *Gilliland v. Hergert*, No. 2:05-cv-01059, 2007 WL 4105223, at *5 (W.D. Pa. Nov. 15, 2007). Zook respectfully submits that the rationale for precluding a private, direct right of action under Section 1-503, as articulated in *Daniel Boone Area School District*, *S. Kane & Son*, *In re Phar-Mor*, and *Schor*, is more persuasive than that of these contrary decisions.

Even if a private, direct cause of action were available to Plaintiff, the Complaint does not adequately plead facts to support such a claim. Section 1-503(a) states, in relevant part:

§ 1-503. Joint and several liability; contribution; corporation's right of indemnification

> (a) Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

70 P.S. § 1-503 (emphasis added). While the statute does not contain the word "control," its broader framework confirms that control is the operative factor in determining whether a party is liable under Section 1-503. In its Definitions section, the PSA defines the term "affiliate" as a person that "controls, is controlled by, or is under common control with, the person specified." 70 P.S. § 1-102(b). In the same section, the term "control" is defined as the possession of "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 70 P.S. § 1-102(g). Thus, to be liable under Section 1-503, a defendant must have "the power to direct or cause the direction of the management and policies" over a person or entity that commits a direct violation of the PSA.

In *Byers v. Pennsylvania Department of Banking and Securities, Bureau of Securities Compliance and Examinations*, the Commonwealth Court of Pennsylvania explored what it meant to be a "control person" subject to joint and several liability for an LLC's violation of the PSA. 259 A.3d 551 (Pa. Cmmwlth. Ct. 2021). The Pennsylvania Department of Banking and Securities (the "Department") alleged that a creamery business and its four shareholders committed various statutory securities violations stemming from the issuance of unregistered promissory notes. *Id.* at 555. The Banking and Securities Commission determined that the creamery business violated the

13

PSA and deemed all four shareholders to be "control persons" jointly and severally liable for those violations. *Id.* at 556. Two of the shareholders ("Martin" and "Byers") appealed to the Commonwealth Court, arguing that they were not control persons and thus could not be held liable for the creamery's conduct. *Id.* at 557.

Both shareholders owned minority shares in the company, were members of the company's board, and knew about the company's sale of the problematic promissory notes. *Id.* at 554-56. They differed, however, with respect to their day-to-day roles with the company and their level of direct knowledge and participation in the company's fraud. Martin, who was also the company's COO, was acutely aware of the company's insolvency at the time the notes were issued and, significantly, had participated in the fraud by signing the notes at issue. *Id.* at 555-56. Byers, conversely, was not aware of the company's insolvency, did not sign the notes, and, despite being involved in the company's day-to-day business operations, did not participate in "what went on in the front office," where the company's management and policies were directed. *Id.* at 565.

The Commonwealth Court concluded that Martin was a "control person" of the company, but Byers was not. In reaching this decision, the court emphasized that by signing the notes, Martin had a direct hand in the fraud. *Id.* at 563. Moreover, the court recognized a key distinction between having the "power to influence or persuade" a company and having "actual control" of that company. *Id.* at 562 ("What the caselaw refers to as 'actual control' is 'essential to control person liability.'") (citation omitted). While Byers may have had the power to influence the company by virtue of his ownership stake, board membership, and day-to-day involvement in business operations, he did not have "actual control" of the company because he did not have the "'power to direct or cause the direction of the management and policies' of the primary violator." *Id.*

14

(quoting 70 P.S. § 1-102(g)). Since Byers lacked the "power to direct" the fraudulent activities that took place, the court found that he could not be liable for the company's violations. *Id.*[4]

Save for conclusory allegations, the Complaint does not aver facts sufficient to demonstrate that Zook (or Hostetter or Joffrey, for that matter) had a direct hand in the alleged statutory violation perpetrated by Heller and the Funds. Plaintiff presumes that Zook, through his "ownership and control stake" in the Funds, would have necessarily gained knowledge of the Funds' misuse of investor capital. *See, e.g.*, Compl. ¶ 87. But Plaintiff does not allege that Zook, himself, misused investor capital. While Plaintiff tries to accuse Zook of assisting with the creation and dissemination of the PPMs upon which it and other investors allegedly relied, *see id.* at ¶ 33, its own Subscription Packet—which included a PPM—was prepared and signed by Heller, not Zook or any of the other Defendants.  *See* Ex. A, Venture Agreement, p. 12, and Docusign Confirmation, p. 65 of 68. And perhaps most importantly, even if the accusation were true, the Supreme Court has made clear that assisting with the creation and dissemination of a statement is not legally sufficient to deem someone the "maker" of that statement. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011) ("One who prepares or publishes a statement on behalf of another is not its maker.").

Plaintiff also fails to adequately allege control. Plaintiff asserts that Zook, Hostetter, and Joffrey, as executive officers, had the "ability to control the Prestige Funds' operations." Compl.

---

[4] The *Byers* court recognized the "dearth of Pennsylvania caselaw interpreting the 1972 Act's definition of 'control[].'" *Id.* at 561. In the absence of any controlling precedent in Pennsylvania, the court turned to the developed body of cases within the Second Circuit for persuasive guidance as to what constitutes "control." While the Second Circuit cases dealt with the federal Securities and Exchange Act of 1934's definition of "control," the *Byers* court nevertheless found their analyses helpful because the federal Act's definition of the term is nearly identical to the PSA's definition. *Compare* 17 C.F.R. § 240.12b-2 ("The term 'control' (including the terms 'controlling,' 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.") *with* 70 P.S. § 1-102(g) ("'Control' (including the terms 'controlling,' 'controlled by' and 'under common control with') means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.").

¶ 160. But, as the *Byers* case illustrates, having control over the day-to-day operations of a company is not the same as having control over the fraudulent activity and/or its primary perpetrator. There are no allegations in the Complaint suggesting that Defendants exercised any control or right to control Heller, who prepared and signed Plaintiff's subscription documents. The Complaint, when viewed in the light most favorable to Plaintiff, establishes, at most, that Defendants had the "power to influence" the Funds.  Since the "power to influence" a company's decisions is insufficient to establish control person liability under Section 1-503(a), Count I of Plaintiff's Complaint must fail.

        **C.**      **Plaintiff Fails to Sufficiently Plead Zook Had Actual Knowledge of a Fraud or Breach of Fiduciary Duty**

In Counts II and III of the Complaint, Plaintiff claims that all four Defendants aided and abetted the Funds in committing common-law fraud (Count II) and breaches of fiduciary duty (Count III). Both claims—which are virtually identical aside from their mechanistic recitations of the elements of each cause of action—generically assert that Defendants knew about the alleged Ponzi scheme and substantially assisted with its execution by serving as officers and raising capital for the Funds. *See* Compl. ¶¶ 159-62, 166-69. But conclusory allegations are insufficient under Rule 9(b) and, as explained below, the Complaint does not contain any well-pleaded allegations sufficient to establish that Zook had actual knowledge of the alleged scheme.

Under Pennsylvania law, actual knowledge is an express, necessary condition of claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty. *See Marion v. Bryn Mawr Trust Company*, 288 A.3d 76, 89 (Pa. 2023) (holding that to be found liable for aiding and abetting fraud, "a party must have actual knowledge of the underlying fraud"); *In re Forks Specialty Metals Inc.*, 2023 WL 3239468, at *20 (Bankr. E.D. Pa. April 30, 2023) ("[T]he elements of a claim for aiding and abetting a breach of fiduciary duty claim are (i) a breach of fiduciary duty

16

owed to another, (ii) knowledge of the breach by an aider and abettor, and (iii) substantial assistance or encouragement by the aider and abettor in effecting that breach.").

A broader reading of the Complaint, setting aside its conclusory allegations, confirms two fundamental facts: (1) the alleged Ponzi scheme was perpetuated by Heller and Paramount, *see* Compl. ¶¶ 72-77, 129; and (2) the Funds (and, by extension, those involved with the Funds, such as Zook, Hostetter, and Joffrey) were tricked by Heller and Paramount, just like investors were. *See id.* at ¶ 78 (acknowledging that Heller and Leaman played "shell games" to cover Paramount's losses). In fact, Plaintiff concedes that the Funds took measures consistent with their obligations to investors. For example, Plaintiff admits that the Funds contracted with Paramount to purchase ATMs and, in fact, remitted investor money to Paramount for this express purpose. *Id.* at ¶¶ 57-61. It was Paramount, not the Funds, who failed to purchase the required number of ATMs and embroiled the ATMs that were purchased into disputes over ownership. *Id.* at ¶¶ 57, 71. Plaintiff does not allege that the Funds induced Paramount to commit this fraud. Thus, the Complaint does not even establish, with well-pleaded facts, that the Funds (as opposed to Paramount) committed a fraud or breach of fiduciary duty, let alone that Zook had actual knowledge of such fraud or breach of fiduciary duty.

Plaintiff does not sufficiently allege that Zook had actual knowledge of the scheme. Compl. ¶¶ 83-101. Plaintiff insists that Zook must have known about the "use (and misuse) of investor capital and the true extent (or lack thereof) of the Prestige Funds' ATM portfolio" due to his "ownership and control stake in the Prestige Funds and the Prestige Fund Managers." *Id.* But this logic does not track: it is certainly plausible that someone with an ownership or control stake in a company *would not* have actual knowledge of wrongs committed by others within the company. It is not uncommon that when a corporate fraud occurs the wrongdoing is limited to one person.

17

Indeed, that is exactly the case here. *See United States v. Daryl F. Heller*, Case No. 5:25-cr-00366-CH (charging Heller alone with engaging in securities fraud). Allegations of "guilty by association" simply do not suffice. *See Marion*, 288 A.3d at 89-93 (explaining that the scienter requirement for an aiding and abetting claim is not easily satisfied; neither intentional ignorance nor constructive notice—by virtue of one's relative proximity to or relationship with a perpetrator—satisfy the requirement).

Plaintiff all but concedes that Zook did not have actual knowledge of the Ponzi scheme, through his association with the Funds or otherwise. In the absence of particularized allegations of fact establishing actual knowledge of fraud or breaches of fiduciary duty, the aiding and abetting claims must be dismissed.

### D.    Plaintiff Was Not Owed Any Fiduciary Duties

Plaintiff has failed to sufficiently plead that it was owed any fiduciary duties by the Funds. It dedicates a single paragraph of its Complaint to this issue:

> At all relevant times, the Prestige Funds owed a fiduciary duty to Plaintiff and the Class because the Prestige Funds purported to have expertise in the investments they sold to Plaintiff and the Class, because the Prestige Funds understood that Plaintiff and members of the Class did not have such expertise, and because the Prestige Funds solicited and held Plaintiff's and the Class' investment monies purportedly for Plaintiff's and members of the Class' benefit. Such fiduciary duties included the duty to act in Plaintiff's and the Class' best interests.

Compl. ¶ 164. But the omission of any citation to applicable legal authority supporting the imposition of fiduciary duties speaks volumes.

The Fund that Plaintiff invested in was a Delaware limited liability company. *See* Ex. A, Private Placement Memorandum, p. 1. Under Delaware law, fiduciary duties in the context of Delaware LLCs are governed by the Delaware Limited Liability Company Act (the "Act"), 6 Del. C. § 18-101, *et seq*. The Act acknowledges that members and managers of an LLC may, at law or

18

in equity, owe fiduciary duties to other members and managers of the LLC, as well to other persons who are parties to or are otherwise bound by the LLC's operating agreement. 6 Del. C. § 18-1101(c). However, the Act does not extend any such fiduciary duties to individuals who are neither members, managers, nor signatories to the LLC's operating agreement.

Plaintiff does not allege in that it was a member/owner of the LLC in which it invested. Indeed, Plaintiff's Subscription Packet clarifies that investors would not become members or otherwise obtain any ownership interest in the LLC: "The nature of this investment opportunity is of a commercial nature only. An Investor will not become a limited liability company member of, or otherwise, obtain any ownership interest or capital interest in Prestige Fund A VI . . . through this offering." Ex. A, Private Placement Memorandum, p. 2. Nor does Plaintiff allege that it signed the LLC's operating agreement. Accordingly, Plaintiff has not and cannot establish entitlement to any fiduciary duty owed by the Funds.

### E.    Plaintiff Has Not Adequately Pled a Section 1-201 Claim

In Count IV, Plaintiff suggests that Zook, Hostetter, and Joffrey violated Section 1-201 of the PSA by offering or selling unregistered securities that were not exempt from the PSA's registration requirements. This claim, too, cannot stand due to Plaintiff's failure to adequately plead it.

Under Section 1-201, "It is unlawful for any person to offer or sell any security in this State unless the security is registered under this act, the security or transaction is exempted under section 202 or 203 hereof or the security is a federally covered security." 70 P.S. § 1-201. Civil liability for selling unregistered securities may be imposed under Section 1-502: "Any person who violates section 201 or any material condition imposed under section 206 or 207 shall be liable to the person purchasing the security offered or sold in violation of section 201 from him who may sue either at law or in equity. . . ." 70 P.S. § 1-502.

Plaintiff claims that the Funds represented to investors, in their Subscription Packets, that the investments offered for sale were exempt from registration under federal securities laws, namely, Rule 506(b) or Rule 506(c) of Regulation D of the Securities Act. *See* Compl. ¶ 175; Plaintiff claims, however, that the investments did not qualify for exemption under Rule 506(b) because the Funds engaged in general solicitation, marketing and advertisement activities. *Id.* at 178. These claims must be rejected for three reasons.

First, the Complaint makes a conclusory mistake that the Funds represented to investors that the securities were exempt under 506(b). This is absolutely false. The Funds only represented to investors that the securities were exempt under Rule 506(c), not Rule 506(b). *See* Ex. A, Private Placement Memorandum, p. 1. The Form D filed by Prestige Fund A VI, LLC with the SEC confirms that only Rule506(c) was cited as a basis for exemption from registration. See https://www.sec.gov/Archives/edgar/data/1923962/000192396222000001/xslFormDX01/primary_doc.xml. This indisputable fact—illustrated by the PPMs upon which the Complaint so heavily relies—renders Plaintiff's allegations about general solicitation inapposite. Securities under Rule 506(c) are not subject to the restriction on general solicitation that apply to Rule 506(b). *See* 17 C.F.R. § 230.506(c); Exhibit B, SEC Guidance on Rule 506(c).

But further, even if Rule 506(b) were at issue, the Complaint does not include any specific examples of alleged general solicitation, marketing, or advertisement activities by the Funds. To establish general solicitation, marketing, or advertising, at a minimum, Plaintiff would need to identify the details and attendant circumstances of a public offering by the Funds such as (1) the specific securities that were offered, (2) the contents of the offering, (3), and when, where, and by whom the offering was made. In the absence of any factual allegations demonstrating that the Funds marketed securities to the general public, as opposed to discrete groups of sophisticated

investors, Plaintiff has failed to sufficiently plead that the securities offered by the Funds were not exempt from registration under federal securities law.

Second, the Funds' filing of Form D statements with the Securities Exchange Commission preempts any state laws requiring registration of securities. The National Securities Market Improvement Act of 1996 ("NSMIA"), codified at 15 U.S.C. § 77, created a category of securities that are exempt from state registration requirements. "The primary purpose of NSMIA was to preempt state 'Blue Sky' laws, which required issuers to register many securities with state authorities prior to marketing in the state." *Chanana's Corp. v. Gilmore*, 539 F. Supp. 2d 1299, 1304 (W.D. Wash. 2003) (citing *Zuri-Invest AG v. Natwest Finance Inc.*, 177 F. Supp. 2d 189, 192 (S.D.N.Y. 2001)). *See also* 15 U.S.C. § 77r(a) ("[N]o law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof-- (1) requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that—(A) is a covered security[.]"). "The Securities and Exchange Commission ("SEC") has promulgated Regulation D to enable issuers to sell securities without registering them with the SEC as otherwise required under the Act. Issuers that sell securities in reliance on Regulation D are required to file Form D with the SEC." *In re Ressler Hardwoods and Flooring, Inc.*, 2009 WL 975155, at *8 (Bankr. M.D. Pa. Apr. 1, 2009). *See also* 17 C.F.R. § 230.503(a). Since Plaintiff admits that the Funds filed Form D statements under the NSMIA, it cannot establish a claim predicated on an alleged violation of a state-law registration requirement. *See In re Ressler*, 2009 WL 975155, at *10 ("Because I find that the Ressler shares are federal covered securities, I find it unnecessary to determine whether the shares are exempt under state law.").

21

Third, and perhaps most importantly, Plaintiff's Section 1-201 claim is time-barred. The PSA provides that "[n]o action shall be maintained to enforce any liability created under section 502 [for selling an unregistered security in violation of Section 1-201] . . . unless brought before the expiration of two years after the violation upon which it is based or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting such violation, whichever shall first expire . . ." 70 P.S. § 1-504. *See also Joyce v. Bobcat Oil & Gas, Inc.*, 2008 WL 919724, at *13 (M.D. Pa. Apr. 3, 2008) (dismissing claim alleging violation of Section 1-201 because operative securities agreements were signed more than two years before suit was filed).

Plaintiff purchased its investment interest in the Funds in October 2022. Compl. ¶ 121. And its Subscription Packet, which it signed, and which it admits to reading and relying upon prior to making its investment decision, expressly and clearly states, in all caps typeface, that the securities being offered for sale were not registered under federal or state securities laws. *See* Compl., ¶¶ 33, 35, 121, and 147; Ex. A, Venture Agreement, p. 1. Accordingly, Plaintiff had one year (or, at most, two years) from, at the latest, the date of its purchase in October 2022 to bring a Section 1-201 claim. Since it waited until 2025 to file its Complaint, any cause of action under Section 201 is barred by the statute of limitations.[5]

### CONCLUSION

This action, in its current form, cannot stand. It is comprised entirely of state law statutory and common-law claims, which are barred in the securities class action context by the Securities

---

[5] "While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc).

Litigation Uniform Standards Act of 1998. But even if this action were not barred on preemption grounds, all four counts of the Complaint would be subject to dismissal for failure to state a claim in accordance with Federal Rule of Civil Procedure 12(b)(6). Since no claims pass legal muster, the Complaint must be dismissed in its entirety.

Respectfully submitted,

**COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.**

By:_____
Christopher D. Carusone, Esquire, ID# 71160
Benjamin D. Hartwell, Esquire, ID# 321003
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
Phone: (215) 564-1700
Email: ccarusone@cohenseglias.com
        bhartwell@cohenseglias.com

**KELLEY CLARKE PC**

Matthew M. Clarke, Esquire (*pro hac vice*)
603 E. Broadway Street
Prosper, TX 75078
Phone: (972) 253-4440
Email:  matt@kelleyclarke.com

**BALLARD SPAHR LLP**

David L. Axelrod, ID# 323792
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 864-8639
Email: axelrodd@ballardspahr.com

*Attorneys for Defendant David Zook*

Date: December 5, 2025

23